UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BENJAMIN RAGAN,

        Plaintiff,                    Case No. 2:20-cv-69

v.                                     Honorable Janet T. Neff

KELLY WELLMAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Corizon Health, Inc.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan.

The events about which he complains occurred at that facility. Plaintiff sues Corizon Health, Inc., and the following officials: KCF Nurse Dawn Eicher; KCF Nurse Practitioner Tara Weist; MDOC Regional Dietician Kelly Wellman (who works from the Marquette Branch Prison); and Doctor Craig Hutchinson (who works from the Duane Waters Health Center).

Plaintiff alleges that he has an ongoing medical condition, HIV-positive status, for which he must take daily medication. Because the medication causes side effects, including stomach ulcers and pain, Dr. Stallman (not a Defendant) prescribed him a high protein snack, to enable him to hold down the medication. On November 25, 2018, Defendant Wellman changed his diet to a low-fat diet, without consulting with the prescribing doctor. Plaintiff contends that this is not the first time Defendant Wellman has changed his diet in this way, and that Petitioner was still recovering from the first time she did so.

Specifically, Plaintiff alleges that, on January 25, 2018, Defendants Wellman and Eicher arbitrarily changed Plaintiff's diet by removing the high-protein snack, also without consultation with Dr. Stallman. Without his snack, Plaintiff stopped taking his medication because of the side effects. He experienced headaches, vomiting, and dizziness from the interruption to his medication. In addition, he experienced a bad outbreak of MRSA, ostensibly from the cessation of his medication. After several days, he was placed on strong antibiotics and medications for pain. As a result of the ordeal, he was unable to sleep, hardly able to eat, and unable to take walks on the yard without causing significant pain. Plaintiff alleges that Defendant Wellman changed his diet on a number of additional occasions.

On July 26, 2018, Defendant Weist saw Plaintiff on his complaint of headaches, dizziness and vomiting. Plaintiff requested placement on an alternative medication for his chronic health condition. Defendant Weist never ordered an alternative medication and never consulted

with Defendant Hutchinson, who was the specialist for Plaintiff's condition. However, Plaintiff was referred four times for treatment of his serious MRSA outbreak.

Eventually, Defendant Weist sent an email to Defendant Hutchinson about Plaintiff being unable to take his medication. On August 30, 2018, Hutchinson responded, "I do not believe we should reinforce this type of behavior." (Compl., ECF No. 1, PageID.6.) Plaintiff alleges that Defendant Hutchinson was deliberately indifferent to Plaintiff's serious medical need to take medications for his HIV-status.

Plaintiff eventually filed a grievance about the change to his diet and the resulting problem taking his medication. Plaintiff alleges that Defendants' actions demonstrate deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment. He also appears to raise a state-law claim that Defendants violated their duty of reasonable care. Plaintiff alleges that Defendant Corizon is liable because it failed to train its medical staff and allegedly withheld the funds to pay for the treatment of his illness.

Plaintiff seeks declaratory relief, temporary and permanent injunctive relief, and nominal, compensatory, and punitive damages.

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

3

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Defendant Corizon, Inc.

Plaintiff makes no factual allegations against Defendant Corizon. He merely makes a conclusory assertion that Corizon did not train its employees and did not provide financial resources to pay for Plaintiff's treatment.

A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like the Corizon Corporations—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993)

(quoting *West v. Atkins,* 487 U.S. 42, 54 (1988)).  The requirements for a valid § 1983 claim against a municipal authority apply equally to private corporations that are deemed state actors for purposes of § 1983.  *See Starcher v. Corr. Med. Sys., Inc.,* 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 817-18 (6th Cir. 1996) (same); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson,* 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same).

Consequently, Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation.  *See id.* (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978).  Liability in a § 1983 action cannot be based on a theory of *respondeat superior.  Id.*  "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the [entity] may be held liable under § 1983."  *Id.*  (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (internal quotation marks omitted).  A custom is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law."  *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 404 (1997).  Moreover, the policy or custom "must be the moving force of the constitutional violation."  *Searcy,* 38 F.3d at 286 (internal quotation marks omitted).  In this case, Plaintiff fails to allege any specific facts regarding Defendant Corizon.

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)).  As a

consequence, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). As a result, a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. *Connick*, 563 U.S. at 61 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997). Plaintiff alleges no facts that would support a failure-to-train claim against Defendant Corizon. Therefore, Defendant Corizon is properly dismissed.

**IV.     Defendants Wellman, Eicher, Weist, & Hutchinson**

Plaintiff alleges that Defendant Wellman, both on her own initiative and in conjunction with Defendant Eicher, repeatedly removed Plaintiff from his special diet, thereby interfering with Plaintiff's ability to take his HIV medications. Plaintiff complains that neither Wellman nor Eicher had the authority to disregard medical orders, did not clear the changes with the prescribing physician, and knew that the change would force Plaintiff to stop taking medications for a chronic condition (at least after the first diet change). Plaintiff alleges that Defendant Weist ignored the seriousness of Plaintiff's inability to take his HIV medications and did not seek to reinstate his medical diet, consult with the prescribing doctor or specialist, or place Plaintiff on alternative medications. Finally, Plaintiff asserts that Defendant Hutchinson, despite knowing the seriousness of Plaintiff's need for HIV medications and the side effects of taking those medications without a high-protein snack, was deliberately indifferent to Plaintiff's medical needs, presenting Plaintiff with the impossible choice of refusing his medication or becoming ill from taking it.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cty.*, 534 F.3d 531, 540 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Cty. Of Saginaw*, 749 F.3d 437, 466, 451 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious,"

7

*Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer,* 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Upon initial review, the Court concludes that Plaintiff's allegations are minimally sufficient to support his Eighth Amendment claims against Defendants Wellman, Eicher, Weist, and Hutchinson.

## V.     Pending Motion

Plaintiff has filed a motion seeking to compel the prison to make photocopies of the exhibits he wishes to file.  Specifically, Plaintiff askes the court to order the prison library to make copies of his grievance documents, so that he can prove that he exhausted his administrative remedies.

Plaintiff is not required to submit evidence of exhaustion at the time he files his complaint.  A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  As a result, any refusal by the prison library to make copies for attachment to Plaintiff's complaint causes no harm to Plaintiff.

The Court therefore will deny his motion without prejudice to any future motion.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Corizon, Inc. will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against Defendants Wellman, Eicher, Weist, and Hutchinson remain in the case. The Court also will deny Plaintiff's motion to compel copies (ECF No. 3).

An order consistent with this opinion will be entered.

Dated:  June 18, 2020                         /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge