UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BENJAMIN RAGAN #314744,                          Case No. 2:20-cv-00069

     Plaintiff,                      Hon. Hala Y. Jarbou
                 U.S. District Judge

 v.

KELLY WELLMAN, et al.,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Benjamin Ragan pursuant to 42 U.S.C. § 1983. Ragan alleges that he is HIV-positive and has been prescribed daily medication that causes side effects, including ulcers and pain. He says he was prescribed a high protein snack to limit these symptoms. He asserts that his diet was then changed without consultation with the doctor who prescribed the snack. Ragan says that, as a result of the change, he began experiencing side effects from his medication that caused him to discontinue the medication. Ragan says that he suffered unnecessary pain and dizziness, headaches, and vomiting. Ragan asserts that Defendants have violated his rights by refusing to change his medication or diet.

Defendants are Nurse Dawn Eicher, Nurse Practitioner Tara Weist, Dietician Kelly Wellman, and Dr. Craig Hutchinson. Defendants Hutchinson and Weist are employed by Corizon Health and are represented by the Chapman Law Group.

Defendants Wellman and Eicher are employed by the Michigan Department of Corrections (MDOC) and are represented by an Assistant Attorney General.

Pending before the Court are the following motions:

- Defendants Hutchinson and Weist's motion for summary judgment based on Ragan's alleged failure to exhaust his administrative remedies (ECF No. 14);

- Ragan's motion for default judgment against Defendants Wellman and Eicher (ECF No. 20); and

- Defendants Eicher and Wellman's motion for summary judgment based on Ragan's alleged failure to exhaust his administrative remedies (ECF No. 28.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court:

- grant Defendants Hutchinson and Weist's motion for summary judgment (ECF No. 14);

- deny Ragan's motion for default judgment (ECF No. 20); and

- grant in part and deny in part Defendants Eicher and Wellman's motion for summary judgment (granting as to Eicher but denying as to Wellman) (ECF No. 28).

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense that Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."

---

[1]     Disputed issues of fact regarding exhaustion under the Prison Litigation Reform Act may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits

the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.   The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.   Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved."  *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.  *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance

procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## IV. Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Diet changed from high protein snack | Wellman and Eicher | January 25, 2018 |
| Changed prescribed diet | Wellman | January 25, 2018 - November 25, 2018 (2019)[3] |
| Refused alternative medication | Weist | July 26, 2018 |
| Failed to prescribe alternative medication | Hutchinson | August 30, 2018 |
| Refused specialty examination | Wellman, Eicher, Weist | January-August 2018 |

## V.  Grievances Identified by Defendants

In their motions for summary judgment, Defendants Wellman, Eicher, Weist, and Hutchinson identified three grievances that Ragan filed with MDOC.  They claim that a review of these grievances will demonstrate that Ragan has failed to exhaust his administrative remedies.  These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| KCF-18-12-909-17B.  (ECF No. 14-1, PageID.93-97.) | Eicher | Retaliation: Tylenol was not provided at med line. | December 9, 2018. | Denied. Acknowledged that a mistake was made. | Denied. | Denied. |
| KCF-19-02-092-28B.  (ECF No. 14-1, PageID.86-90.) | Hutchinson, Jenkins, Eicher, and unknown staff. | Has not been seen by doctor despite nurse referrals. | January 30, 2019. | Rejected as vague and without details. | Rejection upheld. | Rejection upheld. |
| KCF-19-12-941-28G.  (ECF No. 14-1, PageID.74-80.) | Grieved Wellman; Named Eicher, | Changed diet and placed life in | November 25, 2019. | Rejected because the MDOC has no jurisdiction | Rejection upheld. | Rejection upheld. |

---

[3]    Although Ragan's complaint asserted a November 25, 2018 date, Defendants Wellman and Eicher believe that Ragan meant November 25, 2019.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| | Weist, and Hutchinson in his chronology of events. | imminent danger. | | over Defendant Wellman. | | |

## VII. Analysis of summary judgment motions

Ragan argues that he exhausted his claims in **grievance KCF-19-12-941-28G**, which is the third grievance identified in the chart above.  That grievance was rejected after it was determined that the MDOC did not have jurisdiction over Defendant Wellman.  Defendants Wellman, Eicher, Weist and Hutchinson offer different reasons for the Court to conclude that this grievance failed to exhaust the claims that Ragan asserts against them.

This analysis begins with a more detailed examination of this grievance.  At Step I, Ragan identified November 25, 2019 as the incident date.  A portion of his Step I grievance is shown below.

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**
4835-4247  10/94
CSJ-247A

Date Received at Step I  12/3/19  Grievance Identifier:  KCF 1912 941 28G

Be brief and concise in describing your grievance issue.  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

Name (print first, last) BenJamin Ragan  Number 314744  Institution KCF  Lock Number E127  Date of Incident 11-25-19  Today's Date 11-29-19

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? 11-25-19
If none, explain why. I Kited KCF Health care and plead with them to correct this matter

(ECF No. 14-1, PageID.77.)

10

Ragan attached a separate narrative to his Step I grievance.  (*Id*., PageID.79-80.)  That narrative states in part:

> My life is being placed in imminent danger: Because on 11-25-2019, I receive
> a diet detail from Kelly M. Wellman changing my diet. Forcing me to stop taking
> my Td. medication due to bad Headache, Dizziness and vomiting. As a result
> of not being able to take my Td. Medication, irreparable harm will occur from
> my medical condition from which I am being proscribed treatment. (see
> Dr.Stallman diet order).
>
> This is an ongoing matter, as proscribed by court Rules in litigation. I must
> assert a "Chronology" of events, which should not be mistaken as I am asserting
> numerous issues in a single grievance. The chronology order are as followed:

(*Id*.)  In his additional narrative, Ragan explains Defendants Eicher, Weist, and Hutchinson's involvement leading up to the November 25, 2019 incident date.

The Step I response noted that Kelly M. Wellman was "the Regional dietician and whose office is at Marquette Branch Prison."  (*Id*., PageID.78.)  The response explained that "[t]he MDOC has no jurisdiction over this issue as you are grieving Kelly M. Wellman."  (*Id*.)

As previously noted, Ragan's complaint asserted that Defendant Wellman changed his prescribed diet on November 25, 2019.  Ragan did not assert in his complaint that Defendants Eicher, Weist, and Hutchinson violated his rights on November 25, 2019.  And the Step I response to **grievance KCF-19-12-941-28G** did not address complaint Ragan had against Eicher, Weist or Hutchinson for their actions that day.

Furthermore, despite Ragan's claim that he named all the Defendants in his Step II and Step III grievances (ECF No. 18, PageID.114), a review of the documents

11

before the Court indicates that he did not. Ragan's Step II and II appeals are shown below.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Benjamin Ragan | 314744 | KCF | E.1.27 | 11-25-19 | 12/6/19 |

**STEP II** — Reason for Appeal This Grievance is not "resolved". The Prison litigation reform act (PLRA). Under 42 USC 1997 a prisoner must exhaust his administrative remedies prior to filing any civil litigation. That requires a prisoner to exhaust his administrative remedies, Which cause for him to file all three steps grievance on time. In most cases whether the grievance was rejected or not. Clearly I cant fix an irreparable diet that was ordered, So that I may be able to take My meds. The Meds are given to me for infectin Disease [I.D.]. As I already stated this is an on going situation. It is apparent that I will not be given a Special Accommodation detail for my diet Vitamtry the condition that I have suffered from "twice" will ensure again. Therefore I am Seeking punitive damages and a peliminary injunction against all named parties.

**STEP II** — Response

Date Received by Step II Respondent:
REC'D DEC 0 9 2019

WARDEN Horwoski    Horwald    12-11-19
Respondent's Name (Print)    Respondent's Signature    Date

Date Returned to Grievant:
12/12/19

**STEP III** — Reason for Appeal This Grievance is "notll resolved. The respondent did not return the addtional two other copies of the step II Grievance. 28USC1746

(ECF. 14-1, PageID.75.)

The Step II response upheld the Step I rejection of the grievance against Defendant Wellman.

In the Step II appeal, claims that the rejection is improper, and no violation of policy exists. Your Step I grievance is rejected for being outside the KCF's jurisdiction. This grievance is on Kelly M. Wellman, who is the Regional dietician and whose office is at Marquette Branch Prison. The MDOC has no jurisdiction over the issue as you are grieving Kelly M. Wellman. If you have any questions, consult PD 03.02.130 "Prisoner/Parolee Grievances" which is available in the institutional library. The Step I rejection has been reviewed by the Warden's Office in accordance with PD 03.02.130 **"Prisoner/Parolee Grievances"** and the REJECTION IS UPHELD AT STEP II."

(ECF No. 14-1, PageID.76.)

The rejection was upheld at Step III.  (*Id.*, PageID.74.)

In the opinion of the undersigned, Ragan did not exhaust his claims against Defendants Eicher, Weist, and Hutchinson in **grievance KCF-19-12-941-28G** for several reasons.  **First**, Ragan identifed a November 25, 2019 incident date in this grievance.  Ragan did not allege in his complaint that Defendants Eicher, Weist, and Hutchinson violated his rights on November 25, 2019.  **Second**, Ragan's additional narrative indicates that he only was explaining a chronology of events in his Step I grievance because he did not want to have his grievance rejected for containing multiple issues.  Ragan included Defendants Eicher, Weist, and Hutchinson in his Step I narrative only because he wanted to explain the chronology of events that lead to Defendant Wellman changing his diet on November 25, 2019.  **Third**, in its Step I response, the MDOC interpreted the grievance as a complaint against only Defendant Wellman.  In his Step II or Step III appeals, Ragan failed to argue that this interpretation was a mistake.  **Fourth**, Ragan's failure to identify the other Defendants as the subject of this grievance precludes proper exhaustion.  The MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596.  An inmate must name each defendant in a properly exhausted grievance before he files a federal complaint. *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at \*2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other employee").

Ragan simply did not exhaust his claims against Defendants Eicher, Weist, and Hutchinson in **grievance KCF-19-12-941-28G**.

In addition, Ragan did not state grievances against Hutchinson and Weist (the Defendants employed by Corizon Health) in the other relevant grievances. Furthermore, the claims Ragan exhausted against Defendant Eicher in **grievance KCF-19-12-941-28G** (retaliation against Ragan based on Eicher's alleged refusal to provide pain medications on December 9, 2018) were not included in Ragan's complaint.

The only remaining issue is whether Ragan exhausted his administrative remedies against Wellman. As shown above, Ragan named Defendant Wellman in **grievance KCF-19-12-941-28G.** The MDOC rejected the grievance because it did not have jurisdiction over Defendant Wellman. Therefore, Ragan had no **available** remedies that would allow him to exhaust his claim against Defendant Ragan. A prisoner must exhaust **available** remedies before filing a complaint in federal court against an MDOC employee. *Porter*, 534 U.S. at 532; *Booth*, 532 U.S. at 733.

Defendant Wellman has failed to identify a procedure that was available to Ragan that would allow him to exhaust his claims against her. Because it appears that no such procedure exists, at least according to the Step I, II, and III responses to Ragan's grievance, Ragan did not have an available procedure to exhaust. Therefore, it is recommended that the Court find that all of Ragan's claims against Defendant Wellman may proceed.

### VIII.  Motion for Default Judgment

Ragan moves for default judgment against Defendants Eicher and Wellman. (ECF No. 20.)  Ragan states that "[a] default has been entered against Defendants Kelly Wellman and Dawn Eicher for failure to plead or otherwise defend."  (*Id.*, PageID.126.)  "Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."  10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (4th ed.)  Ragan's claim that default has been entered, as required under Fed. R. Civ. P. 55(a), is incorrect.  Wellman and Eicher could waive the right to reply to Ragan's section 1983 action.  42 U.S.C. § 1997e(g)(1).  Their failure to file an answer or other responsive pleading does not constitute default.  *See id.* (noting that "such waiver shall not constitute an admission of the allegations contained in the complaint."  And Defendants Wellman and Eicher are defending, as evidenced by their motion for summary judgment.  (ECF No. 28.)  Ragan's motion for default judgment should be denied.

## IX. Recommendation

The undersigned respectfully recommends that the Court:

- grant Defendants Hutchinson and Weist's motion for summary judgment (ECF No. 14);

- deny Ragan's motion for default judgment (ECF No. 20); and

- grant in part and deny in part Defendants Eicher and Wellman's motion for summary judgment (granting as to Eicher but denying as to Wellman) (ECF No. 28).

If the Court adopts this recommendation, only Ragan's claims against Defendant Wellman relating to events on November 25, 2019 will remain.


Dated:   November 13, 2020                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).