UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BENJAMIN RAGAN #314744,   Case No. 2:20-cv-00069

    Plaintiff,   Hon. Hala Y. Jarbou
            U.S. District Judge

v.

KELLY WELLMAN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses the summary judgment motion filed by Defendant Kelly Wellman.  (ECF No. 82.)

The Plaintiff in this case – state prisoner Benjamin Ragan – filed this civil rights action pursuant to 42 U.S.C. § 1983.  Ragan alleges in his verified complaint that he is HIV-positive and has been prescribed daily medication that causes side effects, including ulcers and pain.  He says that he was prescribed a high-protein snack to limit these symptoms.  He asserts that his diet was then changed by Defendant Wellman, who is a dietitian for the Michigan Department of Corrections.  Ragan says that due to the change in his diet, he began experiencing side effects including pain, dizziness, headaches, and vomiting causing him to discontinue his prescribed medication.

On June 18, 2020, this Court issued a screening Opinion and Order dismissing Defendant Corizon, Inc.  (ECF No. 5 and 6.)  On December 10, 2020, this Court

adopted the Report and Recommendation dismissing Defendants Hutchinson, Weist and Eicher because Ragan failed to exhaust his administrative remedies with respect to his claims against them.  (ECF No. 39.)

In his remaining claim, Ragan asserts that Defendant Wellman acted with deliberate indifference to his serious medical needs by changing his high-protein snack bag to a low-fat snack bag.  Under the applicable MDOC policy directive, Defendant Wellman, as Ragan's dietician, was required to review Ragan's dietary medical orders and make recommendations.  Defendant Wellman reviewed Ragan's medical records, medications and diet.  After determining that a low-fat snack was appropriate, Wellman recommended the change from a high-protein snack to a low-fat snack.  As required by MDOC policy, Ragan's medical provider approved the change.  Ragan has failed to set forth facts that could establish that Defendant Wellman acted with deliberate indifference toward his serious medical needs when she made the recommendation to change from a high-protein snack to a low-fat snack.

It is respectfully recommended that the Court grant Defendant Wellman's motion for summary judgment and dismiss this case.

**II. Factual Allegations**

Ragan says that he was receiving a high-protein snack to help him ingest his "Infection Disease medication" that he takes to treat his HIV.  (ECF No. 1, PageID.5.)  Ragan asserts that he needs the high-protein snack so his stomach can hold down the medication and to prevent side effects like stomach ulcers and pain. (*Id.*)  Ragan says that Defendant Dietician Wellman failed to consult with Dr.

2

Stallman, who had prescribed the high-protein diet, before she changed his diet on January 25, 2018, and again on November 25, 2018. (*Id.*) Ragan complains that the change to his diet caused him to experience bad headaches, vomiting, dizziness, and mersa.[1] (*Id.*) Ragan says these side effects forced him to stop taking his HIV medication. (*Id.*) Ragan asserts that Defendant Wellman acted with deliberate indifference to his serious medical needs by failing to consult with Dr. Stallman before changing his diet. (*Id.*, PageID.6.)

Ragan requests a declaratory judgment, a preliminary and permanent injunction, and nominal, compensatory, and punitive damages. (*Id.*, PageID.8-9.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party

---

[1]  It is likely that Ragan means that he suffered from methicillin-resistant staphylococcus aureus, or MRSA, which is a staph infection that is resistant to certain antibiotics.

opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Eighth Amendment

### A. Legal Standards

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as the failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that **delay in medical treatment** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The

4

Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at

5

837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

6

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006);

7

*Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### B. Analysis

Defendant Wellman concedes, for purposes of this motion, that Ragan has a serious medical condition. (ECF No. 83, PageID.441.)

Ragan alleges that Defendant Wellman changed his diet in January and November of 2018, by changing his high-protein snack bag to a low-fat snack. Ragan says that this change interfered with his ability to take his HIV medication due to the side effects that he experienced. (ECF No. 1, PageID.5.)

First, Defendant Wellman states that she did not change Ragan's snack bag in January or November of 2018. (ECF No. 83-4, PageID.505 (affidavit of Kelly Wellman).) Wellman explained that she did not have authority to order dietary changes and that only a medical provider could order such a change. (*Id.*)

The records before the Court indicate that some changes were made to Ragan's therapeutic diet, although not on or about the dates he alleged. With respect to the

alleged change on January 25, 2018 (ECF No. 1, PageID.5), Wellman provided a response to a kite from Ragan that stated that he would continue to receive his snack bag until May. The kite response, which was issued by Nurse Eicher and is dated January 3, 2018, is shown below.

```
                    MICHIGAN DEPARTMENT OF CORRECTIONS
         Kite Response

Patient Name      BENJAMIN RAGAN                    Age    52 Years
Date Received                                       01/03/2018
Time Received    11:54 AM
Taken By         Dawn K. Eicher, RN
Date Initiated   01/02/2018

Action & Resolution
Date       Time       User                Detail
01/03/2018 11:55 AM   Dawn K. Eicher, RN  Reason: renew snack bag. Assessment/Plan: Your snack bag detail is
                                          good through May 2018 Copy enclosed..

Medical Question
Patient Complaint/Concern: renew snack bag.

Assessment/Plan: Your snack bag detail is good through May 2018 Copy enclosed..
```

(ECF No. 83-3, PageID.466.) The medical records provided by Wellman include no other relevant statements regarding Ragan's diet during January 2018. Wellman asserts that the record above demonstrates that no change was made to Ragan's snack bag in January of 2018, because his snack bag detail was good through May of 2018. (ECF No. 83, PageID.442.)

Ragan takes a different view. His verified complaint asserts that Wellman did change his diet on January 25, 2018. (ECF No. 1, PageID.5.) And during his

deposition, Ragan testified that Dr. Stallman changed his diet back to high-protein snack.  (ECF No. 83-2, PageID.464.)

Ragan attached a number of additional medical records to his response to Wellman's motion for summary judgment.  (*See* ECF No. 85-1.)  But none of these records address the alleged change on January 25, 2018.  Instead, Ragan's records appear to indicate a change from a high-protein evening snack to a low-fat snack on June 13, 2018.  (*Id.*, PageID.553.)

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
>
> PATIENT:            BENJAMIN RAGAN
> DATE OF BIRTH:      10/26/1965
> DATE:               06/13/2018 9:16 AM
>
> **MEDICAL DETAIL ORDERS**
>
> Start Date   Stop Date   Ordered      Ordered By              Order
> 06/13/2018   12/13/2018  06/13/2018   Kelly M. Wellman, RD    Other: Diet order: Low fat evening snack
>
> Comments: Note CHANGE from high protein evening snack to low fat evening snack.
> Prisoners with diet orders must kite to healthcare to request renewal before stop date.
>
> LOCK: E 1 27
>
> Document generated by: Kelly M. Wellman, RD 06/13/2018 1:22 PM Facility: KCF

Despite Wellman's attestation that she lacks authority to order a dietary change, this order appears to indicate that she ordered a change to Ragan's diet.  But Wellman provided a different record from the same day – June 13, 2018 – that indicated that Nurse Practitioner Weist approved a change to the low-fat evening snack.  (ECF No. 83-3, PageID.479.)

10

It should be noted that Wellman's claim regarding the limitation of her authority is supported by the record.  MDOC policy directive 04.07.101 (effective date 9/1/2018) requires that orders for therapeutic diets be approved by a medical provider.  (ECF No. 83-5, PageID.510 (MDOC policy directive 04.07.101 at ¶ G).)  Medical providers include physicians, physician assistants, nurse practitioners, and dentists.  (*Id.*, at ¶ B.)  Dietitians such as Defendant Wellman are not medical providers.  (*Id.*)  The policy requires dietitians to review all diet orders and make recommendations which can be approved or rejected by medical providers.  (*Id.* at ¶ G.)

Ragan also alleges that Wellman switched him to a low-fat snack on November 25, 2018.  (ECF No. 1, PageID.5.)  Wellman testified that in November 2018, she recommended that Ragan continue to receive a low-fat snack bag.  (ECF No. 83-4, PageID.505.)  This recommendation was also noted in Ragan's medical record from his December 11, 2018, provider visit.  (ECF No. 83-3, PageID.498.)  That same day, Dr. Stallman noted that the recommendation was only applicable if Ragan was taking his medications, but he was not:

> change norvasc and zantac to the noon and HS RML medline. Reviewed the Dietary note, see above, indication for the diet would be 'if on said meds, currently is not. Patient also makes mention that cold will restrict his making medlines. Patient wanting an 'alternative' med for HIV, that may not need to be complemented by a snack, or take the meds he has taken with the 'high pro snack'. Will communicate with Dr. Hutchinson for review of patient request. Reviewed the LS spine x-ray and

(ECF No. 83-3, PageID.500.)

Again, the records before the Court do not indicate that Defendant Wellman recommended or made any changes to Ragan's snack in November of 2018.  The undersigned notes that the dates Ragan identifies as the dates of changes to his

11

snacks are not supported by the record. The more likely scenario here is that Ragan is simply off on his dates. For example, Defendant Wellman did make a recommended change to Ragan's snack bag earlier, in April of 2018. On that occasion, she recommended changing Ragan's high-protein snack bag to a low-fat snack bag when she received a request to review his dietary order. (ECF No. 83-4, PageID.505.) This change was reflected in a June 13, 2018, Nutritional Assessment that lists Wellman as a user. The relevant portion is shown below.

> Est nutrition needs: 2400kcal, 69g protein.
> The regular menu is providing 2600kcal, 90g protein per day.
> OMNI meal attendance shows that inmate attended just 63% of his meals over the past 3 months, skips breakfast every day.
>
> The regular menu is providing adequate calories and protein for inmate, but he needs to attend all meals in order to get adequate nutrition.
> No indication for a high protein snack, the regular menu is providing more than enough protein at meals. Recommend a low fat snack due to meds at HS. Will refer to MP for approval of diet order.

(ECF No. 83-3, PageID.477.)

Defendant Wellman completed a "Michigan Department of Corrections, Order Not Completed" form on June 13, 2018, documenting her recommendation for Ragan to have a low-fat evening snack. Nurse Practitioner Weist approved the recommendation:

12

> **DIET ORDERS REQUIRE ACTION**
>
> Accepting or Rejecting this document, will open the Diet Orders Template for provider action on all diet orders.
>
> ---
>
> **DIET ORDERS FOR CURRENT VISIT**
>
> | Status  | Diet Order           | Calories | Mech. Soft | Snack | Start Date  | Stop Date   |
> |---------|----------------------|----------|------------|-------|-------------|-------------|
> | ordered | Low fat evening snack |          | N          | Y     | 06/13/2018  | 12/13/2018  |
>
> Generated by: Kelly M. Wellman, RD, 06/13/2018 1:18 PM
>
> **This document is used as a communication tool, and may not contain the final status of diet orders.
>
> Electronically signed by Tara M. Weist NP on 06/14/2018 10:10 AM

(ECF No. 83-3, PageID.479.) The change was approved by Nurse Practitioner Weist.

Ragan was displeased with the change. On July 25, 2018, Ragan returned his HIV medications and stated he was no longer going to take them. (ECF No. 83-3, PageID.488.) This was documented in Ragan's medical record as the result of "an apparent snack-bag dispute." (ECF No. 83-3, PageID.495.) The next day, Nurse Practitioner Weist discontinued Ragan's low-fat snack because he was no longer taking his medication. (ECF No. 83-3, PageID.489.)

Nurse Practitioner Weist's chart update on August 30, 2018, reflected Dr. Hutchinson's position regarding Ragan's refusal to take his HIV medication:

> Per Dr Hutchinson's response on 8/27/18 "In reference to your email on 8/23/18 regarding his refusal of ART medications, and considering that recent notes don't indicate any other reason, I assume this is a continuing snit over the discontinuation of the 'big snack' as discussed in the email chain below. If he reports post-dose nausea, a low-fat snack would be appropriate.
>
> I do not believe we should reinforce this behavior by moving up PA Sherry's April visit, but if he persists, we'll cancel the med orders."

(ECF No. 83-3, PageID.493.)   Finally, as noted above on December 11, 2018, Dr. Stallman indicated in the medical record that there was no need for a snack bag if Ragan refused to take his medication.   (ECF No. 83-3, PageID.500.)

The medical records reflect that in January of 2019, Ragan was once again requesting to take his HIV medication.   (ECF No. 83-3, PageID.502.)   In response to Ragan's request, Dr. Stallman, in a Clinical Progress Note, commented that Ragan has a history of non-compliance, and that compliance would be a necessary prerequisite for obtaining HIV medication.   (ECF No. 83-3.)

The undersigned acknowledges that Ragan's medical history from January 2018 through January 2019 is rather complicated.   But, despite the complexity, and despite Ragan's attestations, the record demonstrates that no genuine issue of material fact exists in this case for several reasons.

First, there is nothing in the medical record that could establish that Defendant Wellman recommended a change from a high-protein snack bag to a low-fat snack bag at any time close to the dates indicated by Ragan.

Second, based on MDOC policy, Defendant Wellman did not have the authority to unilaterally make the change from a high-protein snack bag to a low-fat snack bag. Ragan argues that Defendant Wellman ordered the diet change and had authority to make the diet change.   (ECF No. 85, PageID.543-545.)   In making this argument, Ragan ignores MDOC policy (*see* ECF No. 83-5, PageID.510 (MDOC policy directive 04.07.101 B and G)) and exactly what Defendant Wellman did.   As noted above, Defendant Wellman completed a "Michigan Department of Corrections Order Not

14

Completed" form on June 13, 2018. (ECF No. 83-3, PageID.479.) That recommendation was approved by Nurse Practitioner Weist. In addition, as noted above, both Doctors Hutchinson and Stallman were aware of the change and noted their approval in the medical records.

First, the records before the Court indicate that Ragan had a long-running dispute with his caregivers over what type of evening snack he should receive. (*See, e.g.*, ECF No. 83-3, PageID.489 (noting Ragan refused to take HIV medications and discontinuing low-fat snack).) A medical decision to take away a snack bag despite a plaintiff's claim that the snack was required to prevent stomach bleeding from his medications did not rise to an Eighth Amendment violation because "a mere difference of opinion between a prisoner and the medical staff about treatment does not state a cause of action." *Knox v. Donnellon*, 2015 WL 5915656, \*2 (E.D. Mich., Oct. 8, 2015) (citing *Kirkham v. Wilkinson*, 101 F. App'x 628, 630 (6th Cir. 2004)). In a similar case, this Court ruled that a dispute with medical providers over whether a snack bag was necessary to help treat a prisoner's hypoglycemia failed to state an Eighth Amendment claim because a disagreement with medical providers about care received fails rise to an Eighth Amendment claim. *Harris v. Prison Health Service Inc.*, 2011 WL 672209, \*7 (W.D. Mich., Feb. 18, 2011).

In her affidavit, Defendant Wellman stated that she reviewed Ragan's diet and noted that he was taking his medications at night before bed and that he received a high-protein snack bag to eat with his medications. (ECF No. 83-4, PageID.506.) Defendant Wellman believed that Ragan's medications could trigger other

15

complications that could be heightened by a high-protein diet. (*Id.*) One of his medications was supposed to be taken on an empty stomach. (*Id.*) Defendant Wellman explains that individuals who experience nausea while taking medication could receive a low-fat snack to help reduce nausea. (*Id.*) After reviewing Ragan's medical records, medications, the MDOC Diet Manual, and nutritional information about the meals that Ragan received at the prison each day, Defendant Wellman concluded that Ragan was receiving an excessive amount of protein each day if he ate all meals available to him. (*Id.*) Defendant Wellman believed that a high-protein snack was not medically necessary and recommended a low-fat snack instead. (*Id.*, PageID.507.) In addition, Defendant Wellman believed there existed no medical reason for Ragan to take his medications in the evening and that he could take them with any of his daily meals, except for the medication that was to be taken on an empty stomach, because he possessed his HIV medications. (*Id.*) In the opinion of the undersigned, Ragan has shown nothing more than a difference of opinion regarding whether he needed a high-protein snack bag or a low-fat snack bag. As set forth above, a mere difference of opinion regarding medical treatment is insufficient to support an Eighth Amendment claim of deliberate indifference to a serious medical need. *Knox*, 2015 WL 5915656 at *2; *Harris*, 2011 WL 672209 at *7.

### V. Eleventh Amendment Immunity

The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the extent that Ragan seeks money damages, costs, and fees from Defendant Wellman in her official capacity, that part of his lawsuit is barred by sovereign immunity.[2]

---

[2] "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id*. However, Ragan has submitted evidence showing that his high-protein snack bag was reinstated in December of 2019 until at least April 30, 3019. (ECF No. 85-1, PageID.559.) Moreover, as explained above, Defendant Wellman does not have unilateral authority under MDOC policy directives to change Ragan's therapeutic diet. Only a medical provider has that authority.

17

## VI. Recommendation

It is respectfully recommended that the Court grant Defendant Wellman's motion for summary judgment. If the Court accepts this recommendation, this case will be dismissed.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: July 19, 2022  /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE